UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------------- X

STEVEN MANFREDO, on behalf of himself and all others similarly situated,

                         Plaintiff,

    - against -

VIP AUTO GROUP OF LONG ISLAND, INC., LEVITTOWN FORD LLC, WESTBURY JEEP CHRYSLER DODGE, INC., WESTBURY IMPORTS LLC f/k/a WESTBURY FIAT LLC, d/b/a ALFA ROMEO OF WESTBURY and FIAT OF WESTBURY, GRAND PRIX SUBARU, LLC, LINDENHURST SUBARU LLC d/b/a SOUTH SHORE SUBARU, VIP OF HUNTINGTON, LLC f/k/a and d/b/a VOLVO CARS OF HUNTINGTON, LLC, GARDEN CITY JEEP CHRYSLER DODGE, LLC, and JOEL SPORN

                         Defendants.

:  Case No. 20 Civ. 3728

:  CLASS AND COLLECTIVE
:  ACTION COMPLAINT

-------------------------------------------------------------------------- X

      Plaintiff Steven Manfredo, on behalf of himself and all others similarly situated ("Plaintiff" or "Class Representative"), through his attorneys Kessler Matura P.C., complaining of VIP Auto Group of Long Island, Inc., Levittown Ford LLC, Westbury Jeep Chrysler Dodge, Inc., Westbury Imports LLC f/k/a Westbury Fiat LLC, d/b/a Alfa Romeo of Westbury and Fiat of Westbury, Grand Prix Subaru, LLC, Lindenhurst Subaru LLC d/b/a South Shore Subaru, VIP of Huntington, LLC f/k/a and d/b/a Volvo Cars of Huntington, LLC, Garden City Jeep Chrysler Dodge, LLC (collectively, "Corporate Defendants"), and Joel Sporn (together with Corporate Defendants, "Defendants"), allege as follows:

## **INTRODUCTION**

      1.    This is a class action brought on behalf of current and former commission-paid employees of Defendants who were denied proper wages and wage statements.

2.     Through their practice of refusing to pay employees at the proper minimum wage rate, Defendants violated the Fair Labor Standards Act of 1938 ("FLSA"), as amended, 29 U.S.C. § 201, *et seq.*, and New York Labor Law ("NYLL" or "N.Y. Lab. Law") Art. 6 & 9. Defendants' failure to pay proper overtime wages and provide accurate wage statements also violated the NYLL.

## JURISDICTION & VENUE

3.     Jurisdiction of the Court over this controversy is based upon 29 U.S.C. § 201, *et seq.*, 28 U.S.C. §§ 1331 and 1337 and the doctrine of supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

4.     This Court has jurisdiction over all state law claims brought in this action pursuant to 28 U.S.C. § 1367.

5.     Defendants are authorized to do business in New York State and do business in Nassau and Suffolk Counties.

6.     Accordingly, this action properly lies in the Eastern District of New York, pursuant to 28 U.S.C. § 1391.

## THE PARTIES

***Plaintiff Steven Manfredo***

7.     Plaintiff Steven Manfredo is an individual who resides in Bayshore, New York.

8.     At all times relevant to the Complaint, Steven Manfredo was an "employee" within the meaning of Section 3(e) of the FLSA, 29 U.S.C. § 203(e) and N.Y. Lab. Law §§ 190(2), 651(5).

9.     Specifically, Steven Manfredo was employed by Defendants as a salesperson from about March 2018 through March 2020.

2

**Defendant VIP Auto Group of Long Island, Inc.**

10.     Upon information and belief, VIP Auto Group of Long Island, Inc. was and still is a domestic corporation, authorized to do business pursuant to the laws of the State of New York.

11.     Upon information and belief, VIP Auto Group of Long Island, Inc.'s principal place of business is located at 3195 Hempstead Turnpike, Levittown, New York 11756.

12.     VIP Auto Group of Long Island, Inc. lists its address to which the Department of State will mail process if accepted on its behalf as:  VIP Auto Group of Long Island, Inc., 3195 Hempstead Turnpike, Levittown, New York 11756.

13.     Upon information and belief, VIP Auto Group of Long Island, Inc. is an automotive dealership business.

14.     At all times hereinafter mentioned, VIP Auto Group of Long Island, Inc. was and still is an "employer" within the meaning of 29 U.S.C. § 203(d), and N.Y. Lab. Law §§ 190(3), 651(6).

15.     At all times hereinafter mentioned, the activities of VIP Auto Group of Long Island, Inc. constituted an "enterprise" within the meaning of 29 U.S.C. §§ 203(r)-(s).

16.     Upon information and belief, VIP Auto Group of Long Island, Inc. maintains control, oversight, and direction over its operations and employment practices.

17.     At all times hereinafter mentioned, VIP Auto Group of Long Island, Inc. employed employees, including Plaintiff, who regularly engaged in commerce or in the production of goods for commerce or in handling, selling or otherwise working on goods and materials which have moved in or been produced for commerce within the meaning of 29 U.S.C. §§ 203(b), (g), (i), (j), (r) & (s).

3

18.     VIP Auto Group of Long Island, Inc.'s annual gross volume of business is not less than $500,000 within the meaning of 29 U.S.C. § 203(s)(A)(ii).

***Defendant Westbury Jeep Chrysler Dodge, Inc.***

19.     Upon information and belief, Westbury Jeep Chrysler Dodge, Inc. was and still is a domestic corporation, authorized to do business pursuant to the laws of the State of New York.

20.     Upon information and belief, Westbury Jeep Chrysler Dodge, Inc.'s principal place of business is located at 100 Jericho Turnpike, Jericho, New York 11753.

21.     Westbury Jeep Chrysler Dodge, Inc. lists the address to which the Department of State will mail process if accepted on its behalf as:  Westbury Jeep Chrysler Dodge, Inc., 3195 Hempstead Turnpike, Levittown, New York 11756.

22.     Westbury Jeep Chrysler Dodge, Inc. states that its Chief Executive Officer and address are as follows:  Joel Sporn, 3195 Hempstead Turnpike, Levittown, New York 11756.

23.     Upon information and belief, Westbury Jeep Chrysler Dodge, Inc. is an automotive dealership business.

24.     At all times hereinafter mentioned, Westbury Jeep Chrysler Dodge, Inc. was and still is an "employer" within the meaning of 29 U.S.C. § 203(d) and N.Y. Lab. Law §§ 190(3), 651(6).

25.     At all times hereinafter mentioned, the activities of Westbury Jeep Chrysler Dodge, Inc. constituted an "enterprise" within the meaning of 29 U.S.C. §§ 203(r)-(s).

26.     Upon information and belief, Westbury Jeep Chrysler Dodge, Inc. maintains control, oversight, and direction over its operations and employment practices.

27.     At all times hereinafter mentioned, Westbury Jeep Chrysler Dodge, Inc. employed employees, including Plaintiff, who regularly engaged in commerce or in the production of

goods for commerce or in handling, selling or otherwise working on goods and materials which have moved in or been produced for commerce within the meaning of 29 U.S.C. §§ 203(b), (g), (i), (j), (r) & (s).

***Defendant Westbury Imports LLC***

28.     Upon information and belief, Westbury Imports LLC was and still is a domestic corporation, authorized to do business pursuant to the laws of the State of New York.

29.     Upon information and belief, Westbury Imports LLC does business as Alfa Romeo of Westbury.

30.     Upon information and belief, Westbury Imports LLC does business as Fiat of Westbury.

31.     Upon information and belief, Westbury Imports LLC's principal place of business is located at 928 Jericho Turnpike, Westbury, New York 11590.

32.     Westbury Imports LLC lists the address to which the Department of State will mail process if accepted on its behalf as:  Westbury Imports LLC, 3195 Hempstead Turnpike, Levittown, New York 11756.

33.     Upon information and belief, Westbury Imports LLC is an automotive dealership business.

34.     At all times hereinafter mentioned, Westbury Imports LLC was and still is an "employer" within the meaning of 29 U.S.C. § 203(d), and N.Y. Lab. Law §§ 190(3), 651(6).

35.     At all times hereinafter mentioned, the activities of Westbury Imports LLC constituted an "enterprise" within the meaning of 29 U.S.C. §§ 203(r)-(s).

36.     Upon information and belief, Westbury Imports LLC maintains control, oversight, and direction over its operations and employment practices.

37.     At all times hereinafter mentioned, Westbury Imports LLC employed employees, including Plaintiff, who regularly engaged in commerce or in the production of goods for commerce or in handling, selling or otherwise working on goods and materials which have moved in or been produced for commerce within the meaning of 29 U.S.C. §§ 203(b), (g), (i), (j), (r) & (s).

*Defendant Grand Prix Subaru, LLC*

38.     Upon information and belief, Grand Prix Subaru, LLC was and still is a domestic corporation, authorized to do business pursuant to the laws of the State of New York.

39.     Upon information and belief, Grand Prix Subaru, LLC was formerly known as Grand Prix Jeep Chrysler, LLC.

40.     Upon information and belief, Grand Prix Subaru, LLC's principal place of business is located at 500 South Broadway, Hicksville, New York 11801.

41.     Grand Prix Subaru, LLC lists the address to which the Department of State will mail process if accepted on its behalf as:  Grand Prix Subaru, LLC, 3195 Hempstead Turnpike, Levittown, New York 11756.

42.     Upon information and belief, Grand Prix Subaru, LLC is an automotive dealership business.

43.     At all times hereinafter mentioned, Grand Prix Subaru, LLC was and still is an "employer" within the meaning of 29 U.S.C. § 203(d) and N.Y. Lab. Law §§ 190(3), 651(6).

44.     At all times hereinafter mentioned, the activities of Grand Prix Subaru, LLC constituted an "enterprise" within the meaning of 29 U.S.C. §§ 203(r)-(s).

45.     Upon information and belief, Grand Prix Subaru, LLC maintains control, oversight, and direction over its operations and employment practices.

46.     At all times hereinafter mentioned, Grand Prix Subaru, LLC employed employees, including Plaintiff, who regularly engaged in commerce or in the production of goods for commerce or in handling, selling or otherwise working on goods and materials which have moved in or been produced for commerce within the meaning of 29 U.S.C. §§ 203(b), (g), (i), (j), (r) & (s).

**Defendant Lindenhurst Subaru LLC**

47.     Upon information and belief, Lindenhurst Subaru LLC was and still is a domestic corporation, authorized to do business pursuant to the laws of the State of New York.

48.     Upon information and belief, Lindenhurst Subaru LLC's principal place of business is located at 305 East Sunrise Highway, Lindenhurst, New York 11757.

49.     Lindenhurst Subaru LLC lists the address to which the Department of State will mail process if accepted on its behalf as:  Lindenhurst Subaru LLC, 3195 Hempstead Turnpike, Levittown, New York 11756.

50.     Lindenhurst Subaru LLC does business as South Shore Subaru.

51.     Upon information and belief, Lindenhurst Subaru LLC is an automotive dealership business.

52.     At all times hereinafter mentioned, Lindenhurst Subaru LLC was and still is an "employer" within the meaning of 29 U.S.C. § 203(d) and N.Y. Lab. Law §§ 190(3), 651(6).

53.     At all times hereinafter mentioned, the activities of Lindenhurst Subaru LLC constituted an "enterprise" within the meaning of 29 U.S.C. §§ 203(r)-(s).

54.     Upon information and belief, Lindenhurst Subaru LLC maintains control, oversight, and direction over its operations and employment practices.

55.     At all times hereinafter mentioned, Lindenhurst Subaru LLC employed employees, including Plaintiff, who regularly engaged in commerce or in the production of goods for commerce or in handling, selling or otherwise working on goods and materials which have moved in or been produced for commerce within the meaning of 29 U.S.C. §§ 203(b), (g), (i), (j), (r) & (s).

### Defendant VIP of Huntington, LLC

56.     Upon information and belief, VIP of Huntington, LLC was and still is a domestic corporation, authorized to do business pursuant to the laws of the State of New York.

57.     Upon information and belief, VIP of Huntington, LLC's principal place of business is located at 345 West Jericho Turnpike, Huntington, New York 11743.

58.     VIP of Huntington, LLC lists the address to which the Department of State will mail process if accepted on its behalf as:  VIP of Huntington, LLC, 3195 Hempstead Turnpike, Levittown, New York 11756.

59.     VIP of Huntington, LLC does business as Volvo Cars of Huntington.

60.     VIP of Huntington, LLC was formerly known as Volvo Cars of Huntington, LLC

61.     Upon information and belief, VIP of Huntington, LLC is an automotive dealership business.

62.     At all times hereinafter mentioned, VIP of Huntington, LLC was and still is an "employer" within the meaning of 29 U.S.C. § 203(d) and N.Y. Lab. Law §§ 190(3), 651(6).

63.     At all times hereinafter mentioned, the activities of VIP of Huntington, LLC constituted an "enterprise" within the meaning of 29 U.S.C. §§ 203(r)-(s).

64.     Upon information and belief, VIP of Huntington, LLC maintains control, oversight, and direction over its operations and employment practices.

65.     At all times hereinafter mentioned, VIP of Huntington, LLC employed employees, including Plaintiff, who regularly engaged in commerce or in the production of goods for commerce or in handling, selling or otherwise working on goods and materials which have moved in or been produced for commerce within the meaning of 29 U.S.C. §§ 203(b), (g), (i), (j), (r) & (s).

**Defendant Garden City Jeep Chrysler Dodge, LLC**

66.     Upon information and belief, Garden City Jeep Chrysler Dodge, LLC was and still is a domestic corporation, authorized to do business pursuant to the laws of the State of New York.

67.     Upon information and belief, Garden City Jeep Chrysler Dodge, LLC's principal place of business is located at 283 North Franklin Street, Hempstead, New York 11550.

68.     Garden City Jeep Chrysler Dodge, LLC lists the address to which the Department of State will mail process if accepted on its behalf as:  Garden City Jeep Chrysler Dodge, LLC, 3195 Hempstead Turnpike, Levittown, New York 11756.

69.     Upon information and belief, Garden City Jeep Chrysler Dodge, LLC is an automotive dealership business.

70.     At all times hereinafter mentioned, Garden City Jeep Chrysler Dodge, LLC was and still is an "employer" within the meaning of 29 U.S.C. § 203(d) and N.Y. Lab. Law §§ 190(3), 651(6).

71.     At all times hereinafter mentioned, the activities of Garden City Jeep Chrysler Dodge, LLC constituted an "enterprise" within the meaning of 29 U.S.C. §§ 203(r)-(s).

72.     Upon information and belief, Garden City Jeep Chrysler Dodge, LLC maintains control, oversight, and direction over its operations and employment practices.

73.     At all times hereinafter mentioned, Garden City Jeep Chrysler Dodge, LLC employed employees, including Plaintiff, who regularly engaged in commerce or in the production of goods for commerce or in handling, selling or otherwise working on goods and materials which have moved in or been produced for commerce within the meaning of 29 U.S.C. §§ 203(b), (g), (i), (j), (r) & (s).

***Corporate Defendants***

74.     Corporate Defendants constitute a unified operation.

75.     Corporate Defendants constitute a common enterprise.

76.     Corporate Defendants have interrelated operations.

77.     Corporate Defendants have common management.

78.     Corporate Defendants have a centralized control of labor relations.

79.     Corporate Defendants have common ownership, including Joel Sporn.

80.     Corporate Defendants share employees.

81.     Corporate Defendants commingled funds with each other.

82.     Corporate Defendants share the same physical addresses in the State of New York.

83.     Corporate Defendants constitute a single employer.

84.     Corporate Defendants constitute an integrated enterprise.

85.     Corporate Defendants utilize the same address for service of process:   3195 Hempstead Turnpike, Levittown, New York 11756.

86.     Corporate Defendants share a common website:  www.vipautomotivegroup.com.

87.     Corporate Defendants share a common training portal:  VIP University Online Learning Center,  https://lms.latitudelearning.com/home/asp_main.aspx?sCode=VIPUNIVERSITY&oCode=VIPUNIVERSITY.

88.     Employees across the Corporate Defendants' locations participate in the "VIP University," which Defendant Joel Sporn describes as Corporate Defendants' "training arm."

89.     Trainees across Corporate Defendants' locations are provided with common training materials and presentations.

90.     An example is the "Road to a Sale," which is presented and prepared by VIP University Director Dan Ballasy.

91.     Corporate Defendants use a centralized hiring portal to solicit applications and notify the public of job openings: https://workforcenow.adp.com/mascsr/default/mdf/recruitment/recruitment.html?cid=d98d34b4-a989-4cd9-940d-b8dccb723b10&&ccId=19000101_000001&type=MP&lang=en_US.

92.     For example, as of August 6, 2020, Corporate Defendants used a single job posting/description for a Sales Professional position that applied to multiple locations.

93.     Corporate Defendants' websites are linked to one another.

94.     Corporate Defendants maintain control, oversight, and direction over their commission-paid employees and other employees, including timekeeping, payroll and other employment practices that applied to them.

95.     At all times hereinafter mentioned, Corporate Defendants individually and collectively were and still are "employers" within the meaning of 29 U.S.C. § 203(d), and N.Y. Lab. Law §§ 190(3), 651(5).

96.     At all times hereinafter mentioned, the activities of Corporate Defendants constituted an "enterprise" within the meaning of 29 U.S.C. § 203(r) & (s).

97.     At all times hereinafter mentioned, Corporate Defendants employed employees, including Plaintiff, who regularly engaged in commerce or in the production of goods for commerce or in handling, selling or otherwise working on goods and materials which have

moved in or been produced for commerce within the meaning of 29 U.S.C. § 203(b), (g), (i), (j), (r) & (s).

98.     Corporate Defendants collective annual gross volume of business is not less than $500,000 within the meaning of 29 U.S.C. § 203(s)(A)(ii).

***Defendant Joel Sporn***

99.     Upon information and belief, Joel Sporn has an ownership interest in:

    a.  VIP Auto Group of Long Island, Inc.;

    b.  Levittown Ford LLC;

    c.  Westbury Jeep Chrysler Dodge, Inc.;

    d.  Westbury Imports LLC;

    e.  Grand Prix Subaru, LLC;

    f.  Lindenhurst Subaru LLC;

    g.  VIP of Huntington, LLC; and

    h.  Garden City Jeep Chrysler Dodge, LLC.

100.    Upon information and belief, Joel Sporn is the President of VIP Auto Group of Long Island, Inc.

101.    Joel Sporn holds himself out as the President of VIP Auto Group of Long Island, Inc., including in on-boarding and training materials given to Corporate Defendants' employees.

102.    Upon information and belief, Joel Sporn is the President of:

    a.  Levittown Ford LLC;

    b.  Westbury Jeep Chrysler Dodge, Inc.;

    c.  Westbury Imports LLC;

    d.  Grand Prix Subaru, LLC;

e.  Lindenhurst Subaru LLC;

f.  VIP of Huntington, LLC; and

g.  Garden City Jeep Chrysler Dodge, LLC.

103.  Upon information and belief, Joel Sporn is a shareholder of:

a.  VIP Auto Group of Long Island, Inc.;

b.  Levittown Ford LLC;

c.  Westbury Jeep Chrysler Dodge, Inc.;

d.  Westbury Imports LLC;

e.  Grand Prix Subaru, LLC;

f.  Lindenhurst Subaru LLC;

g.  VIP of Huntington, LLC; and

h.  Garden City Jeep Chrysler Dodge, LLC.

104.  Upon information and belief, Joel Sporn is a corporate officer of:

a.  VIP Auto Group of Long Island, Inc.;

b.  Levittown Ford LLC;

c.  Westbury Jeep Chrysler Dodge, Inc.;

d.  Westbury Imports LLC;

e.  Grand Prix Subaru, LLC;

f.  Lindenhurst Subaru LLC;

g.  VIP of Huntington, LLC; and

h.  Garden City Jeep Chrysler Dodge, LLC.

105.  Upon information and belief, Joel Sporn is the Chief Executive Officer of:

a.  VIP Auto Group of Long Island, Inc.;

b. Levittown Ford LLC;

c. Westbury Jeep Chrysler Dodge, Inc.;

d. Westbury Imports LLC;

e. Grand Prix Subaru, LLC;

f. Lindenhurst Subaru LLC;

g. VIP of Huntington, LLC; and

h. Garden City Jeep Chrysler Dodge, LLC.

106.    Upon information and belief, Joel Sporn is an agent of:

a. VIP Auto Group of Long Island, Inc.;

b. Levittown Ford LLC;

c. Westbury Jeep Chrysler Dodge, Inc.;

d. Westbury Imports LLC;

e. Grand Prix Subaru, LLC;

f. Lindenhurst Subaru LLC;

g. VIP of Huntington, LLC; and

h. Garden City Jeep Chrysler Dodge, LLC.

107.    Upon information and belief, Joel Sporn has the authority over personnel decisions for Corporate Defendants.

108.    Upon information and belief, Joel Sporn has the authority over payroll decisions for Corporate Defendants.

109.    Upon information and belief, Joel Sporn supervises employees of the Corporate Defendants.

110. Upon information and belief, Joel Sporn has the authority to hire and fire employees for Corporate Defendants.

111. Joel Sporn has the power to make binding decisions for Corporate Defendants.

112. Joel Sporn has the power to transfer the assets or liabilities of Corporate Defendants.

113. Joel Sporn has the power to declare bankruptcy on behalf of Corporate Defendants.

114. Joel Sporn has the power to enter into contracts on behalf of Corporate Defendants.

115. Joel Sporn holds himself out as the founder and owner of Corporate Defendants.

116. Joel Sporn holds himself out as the President of Corporate Defendants.

117. Joel Sporn oversees the day-to-day operations at Corporate Defendants.

118. Joel Sporn "is involved in the day to day management of" Westbury Jeep Chrysler Dodge, Inc. *See* Answer, *Talvera v. Westbury Jeep Chrysler Dodge, Inc.*, No. 2:19 Civ. 3457, ECF No. 12 (E.D.N.Y. Sept. 13, 2019), ¶ 10.

119. Joel Sporn maintains an office at the Levittown location, where Plaintiff worked.

120. Corporate Defendants' managers report to Joel Sporn and are under his supervision.

121. At all times hereinafter mentioned, Joel Sporn was and still is an "employer" within the meaning of 29 U.S.C. § 203(d), and N.Y. Lab. Law §§ 190(3), 651(5).

## FLSA COLLECTIVE ACTION CLAIMS

122. Plaintiff seeks to proceed as a collective action with regard to the First Cause of Action, pursuant to 29 U.S.C. § 216(b) on behalf of himself and the following class of persons:

> All commission-paid salespersons, however titled, employed by Defendants at any time in the three years prior to the filing of this Complaint (the "FLSA Collective").

123.    Upon information and belief, there are approximately more than 40 current and former employees that are similarly situated to Plaintiff who were denied the minimum wage at the proper rate.

124.    Plaintiff represents other employees and is acting on behalf of Defendants' current and former employees' interests as well as his own interests in bringing this action.

125.    Defendants unlawfully required Plaintiff and the FLSA Collective to work workweeks in which they earned less than the applicable minimum wage.

126.    Defendants was aware or should have been aware that the law required it to pay Plaintiff and the FLSA Collective the applicable minimum wage each week.

127.    The FLSA Collective is readily identifiable and locatable through the use of Defendants' records.  The FLSA Collective should be notified of and allowed to opt-in to this action, pursuant to 29 U.S.C. § 216(b).  Unless the Court promptly issues such a notice, the FLSA Collective, who have been unlawfully deprived of minimum wages in violation of the FLSA, will be unable to secure compensation to which they are entitled, and which has been unlawfully withheld from them by Defendants.

## FEDERAL RULE OF CIVIL PROCEDURE RULE 23
## NEW YORK CLASS ALLEGATIONS

128.    Plaintiff brings the Second, Third, and Fourth Causes of Action on his behalf and as a class action, pursuant to Fed R. Civ. P. 23(a) and (b), on behalf of the following class of persons:

> All commission-paid salespersons, however titled, employed by Defendants at any time in the six years prior to the filing of this Complaint (the "Class").

16

129.     The persons in the Class are so numerous that joinder of all members is impracticable.  Although, the precise number of such persons is unknown, and facts on which the calculation of that number can be based are presently within the sole control of Defendants.

130.     Upon information and belief, the size of the Class exceeds 40.

131.     Given the size of the sales staff at each location and turnover through the six-year period, the Class size is at least 80 individuals.

132.     For example, at Levittown Ford, where Plaintiff worked, he was one of the approximately 14 salespeople.

133.     The Second, Third, and Fourth Causes of Action are properly maintainable as a class action under Fed. R. Civ. Pro. 23(b)(3).  There are questions of law and fact common to the Class that predominate over any questions solely affecting individual members of the Class, including but not limited to:

   a.   whether Defendants failed to pay the minimum wage in all weeks to the Class Representative and the Class in violation of and within the meaning of the N.Y. Lab. Law § 650, *et seq.* and the supporting New York State Department of Labor Regulations, 12 N.Y.C.R.R. Part 142;

   b.   whether Defendants failed to pay proper compensation to the Class Representative and the Class for all work hours in excess of 40 per workweek in violation of and within the meaning of the N.Y. Lab. Law §§ 190, 650, *et seq.* and the supporting New York State Department of Labor Regulations, 12 N.Y.C.R.R. Part 142;

   c.   whether Defendants failed to provide the Class Representative and the Class with proper wage statements (i.e., paystub) in violation of and within the meaning of the N.Y. Lab. Law § 195;

   d.   whether Defendants acted in good faith when failing to pay the Class Representative and the Class;

   e.   whether Defendants acted in good faith when failing to provide accurate paystubs to the Class Representative and the Class; and

   f.   the nature and extent of class-wide injury and the measure of damages for those injuries.

134.    The Class Representative fairly and adequately protect the interests of the Class and have no interests antagonistic to the class.

135.    The Class Representative is represented by attorneys who are experienced and competent in both class litigation and employment litigation.

136.    The Class Representative and the Class have been equally affected by Defendants' failure to pay proper wages.  Moreover, members of the Class still employed by Defendants may be reluctant to raise individual claims for fear of retaliation.

137.    Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

138.    Plaintiff's claims are typical of those of the Class.  Plaintiff and the Class were subjected to Defendants' policies, practices, programs, procedures, protocols and plans alleged herein concerning the failure to pay proper wages and the failure to keep adequate records. Plaintiff's job duties are typical of those of the Class.

139.    A class action is superior to other available methods for the fair and efficient adjudication of this litigation – particularly in the context of wage litigation like the present action, where individual plaintiffs may lack the financial resources to vigorously prosecute a lawsuit in federal court against a corporate defendant.  The Class has been damaged and are entitled to recovery as a result of Defendants' common and uniform policies, practices, and procedures.  Although the relative damages suffered by individual members of the Class are not *de minimis*, such damages are small compared to the expense and burden of individual prosecution of this litigation.  In addition, class treatment is superior because it will obviate the

need for unduly duplicative litigation that might result in inconsistent judgments about Defendants' practices.

## CLASS-WIDE FACTUAL ALLEGATIONS

140.    Plaintiff and the members of the FLSA Collective and Class (collectively, "Class Members") are victims of Defendants' common policy and plan that violated their rights under the FLSA by paying Class Members weekly wages at a rate less the applicable minimum wage times the number of hours worked. At all times relevant, Defendants' unlawful policy and pattern or practice has been willful.

141.    Class Members sell automobiles to Defendants' customers.

142.    Class Members are schedule to work upwards of 50 hours a week to sell Defendants' inventory of vehicles.

143.    For example, attached as Exhibit B is sample schedule from the Levittown location.

144.    Defendants pay them a weekly salary, plus commissions and bonuses on those sales.

145.    If Class Members do not make sales in a given week, their corresponding pay will only be for their weekly salary.

146.    Plaintiff and the Class Members are victims of Defendants' common policy and plan that violated their rights under the NYLL by paying Class Members weekly wages at a rate less the applicable overtime rate based on the number of hours worked. At all times relevant, Defendants' unlawful policy and pattern or practice has been either willful or in the absence of good faith.

147.    Despite requiring Class Members to work over 40 hours a week, Defendants did not pay Class Members at the rate of one and one-half times the minimum wage for all hours worked over 40 in all weeks worked.

148.    In those weeks when Class Members made little to no sales, their wages fell below the overtime requirements of the NYLL.

149.    Plaintiff and the Class Members are victims of Defendants' common policy and plan that violated their rights under the NYLL by failing to provide them with accurate wage statements. At all times relevant, Defendants' unlawful policy and pattern or practice has been either willful or in the absence of good faith.

150.    Section 195(3) of the NYLL requires that employers "furnish each employee with a statement with every payment of wages" that contains, *inter alia*, the "name of the employer." N.Y. Lab. Law § 195(3).

151.    It also provides that "[f]or all employees who are not exempt from overtime compensation as established in the commissioner's minimum wage orders or otherwise provided by New York state law or regulation, the statement shall include . . . the number of regular hours worked, and the number of overtime hours worked." *Id*.

152.    Defendants' paystubs, however, failed to provide Class Members with the employers' actual name and failed to disclose the number of hours worked by Class Members. *See* Ex. B (Sample Paystub).

153.    Class Members are not exempt from the overtime provisions of the NYLL.

154.    In a 2010 opinion letter, the New York State Department of Labor specifically addressed whether automobile salespersons are exempt from the NYLL's overtime requirement and stated that "the State minimum wage orders automotive salespersons be paid overtime at a

rate of not less one and one half times the minimum wage for all hours worked in excess of forty per work week." Maria L. Colavito, <u>Request for Opinion:  Automotive Salespersons</u>, RO-09-0177, Feb. 25, 2010,  <u>https://labor.ny.gov/legal/counsel/pdf/Minimum%20Wage-Generally/RO-09-0177%20-%20Minimum%20Wage%20Automotive.pdf</u>.

155.    Defendants were or should have been aware that the FLSA and NYLL required them to pay Class Members the applicable minimum wages each week.

156.    Defendants were or should have been aware that the NYLL required them to pay Class Members the applicable overtime rate for hours worked over 40 each week.

157.    Defendants were or should have been aware that the NYLL required them to provide accurate wage statements each pay period.

158.    Defendants' unlawful conduct has been widespread, repeated, and consistent.

## PLAINTIFF'S FACTUAL ALLEGATIONS

159.    Plaintiff Steven Manfredo was an employee of Defendants, working under their direct supervision.

160.    Manfredo was employed by Defendants from about March 2018 through March 2020.

161.    Manfredo worked as a commission-paid salesperson at the Levittown location.

162.    At all times, Manfredo was required to be paid at the applicable minimum wage.

163.    At all times, Manfredo was required to overtime pay at the rate of one and one-half times the applicable minimum wage.

164.    Throughout his employment, Manfredo regularly worked over 40 hours a week. *See* Ex. B (Sample Schedule).

165.    In numerous workweeks, however, Defendants only paid him his $400 salary. *See* Ex. C (Sample Paystub).

166.    Moreover, throughout his employment, Manfredo was given a paystub that failed to report the actual name of his employer and the hours he worked.  *See id*.

### FIRST CAUSE OF ACTION
**FLSA – Minimum Wages**
**(Brought on behalf of Plaintiff and the FLSA Collective)**

167.    Plaintiff incorporates by reference all preceding allegations.

168.    Plaintiff and members of the FLSA Collective are employees entitled to be paid no less than the applicable minimum wage.

169.    Defendants employed Plaintiff and Class Members for workweeks in which Plaintiff and Class Members were paid at a rate of less than the applicable minimum wage.

170.    Plaintiff has expressed his consent to make these claims against Defendants by filing a written consent form, pursuant to 29 U.S.C. § 216(b).  *See* Ex. A (Consent).

171.    Defendants failed to make a good faith effort to comply with the FLSA with respect to compensating Plaintiff and the FLSA Collective.

172.    Because Defendants' violations of the FLSA were willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. § 255.

173.    As a consequence of the willful underpayment of wages, alleged above, Plaintiff and members of the FLSA Collective incurred damages thereby and Defendants are indebted to them in the amount of the unpaid minimum wages, together with interest, liquidated damages, attorneys' fees, and costs in an amount to be determined at trial.

### SECOND CAUSE OF ACTION
**NYLL – Minimum Wages**
**(Brought on behalf of Plaintiff and the Class)**

174.    Plaintiff incorporates by reference all preceding allegations.

175.    Plaintiff and Class Members are employees entitled to be paid no less than the applicable minimum wage.

176.    Defendants employed Plaintiff and Class Members for workweeks in which Plaintiff and Class Members were paid at a rate of less than the applicable minimum wage.

177.    By the course of conduct set forth above, Defendants violated N.Y. Lab. Law § 650, *et seq.*; 12 N.Y.C.R.R. §§ 142-2.1, 2.9.

178.    Defendants had a policy and practice of refusing to pay the minimum wage for all hours worked by Plaintiff and the Class.

179.    Defendants' failure to pay overtime compensation at the proper rate to Plaintiff and the Class was willful or otherwise lacked sufficient good faith within the meaning of N.Y. Lab. Law § 663.

180.    As a consequence of the willful underpayment of wages, alleged above, Plaintiff and Class Members incurred damages thereby and Defendants is indebted to them in the amount of the unpaid minimum wages and such other legal and equitable relief due to Defendants' unlawful and willful conduct, as the Court deems just and proper.

181.    Plaintiff, on behalf of himself and the Class, seeks recovery of liquidated damages, attorneys' fees, and costs to be paid by Defendants as provided by the NYLL.

**THIRD CAUSE OF ACTION**
**NYLL – Unpaid Overtime**
**(Brought on behalf of Plaintiff and the Class)**

182.    Plaintiff incorporates by reference all preceding allegations.

183.    Defendants employed Plaintiff and Class Members for workweeks longer than 40 hours and willfully failed to compensate Plaintiff at a rate of at least one and one-half times the applicable minimum wage rate for all hours over 40, in violation of the requirements of the NYLL.

184. By the course of conduct set forth above, Defendants violated N.Y. Lab. Law § 650, *et seq.*; 12 N.Y.C.R.R. §§ 142-2.2, 2.9.

185. Defendants had a policy and practice of refusing to pay overtime compensation at the proper rate to Plaintiff and the Class.

186. Defendants' failure to pay overtime compensation at the proper rate to Plaintiff and the Class was willful or otherwise lacked sufficient good faith within the meaning of N.Y. Lab. Law § 663.

187. As a consequence of the willful underpayment of wages, alleged above, Plaintiff and Class Members incurred damages thereby and Defendants is indebted to them in the amount of the unpaid overtime compensation and such other legal and equitable relief due to Defendants' unlawful and willful conduct, as the Court deems just and proper.

188. Plaintiff, on behalf of himself and the Class, seeks recovery of liquidated damages, attorneys' fees, and costs to be paid by Defendants as provided by the NYLL.

**FOURTH CAUSE OF ACTION**
**NYLL – Wage Statement and Recordkeeping Claims**
**(Brought on behalf of Plaintiff and the Class)**

189. Plaintiff incorporates by reference all preceding allegations.

190. N.Y. Lab. Law § 195(4) requires every employer to establish and maintain, for at least three years, *inter alia*, payroll records showing the hours worked, gross wages, deductions and net wages for each employee.

191. N.Y. Lab. Law § 661 requires every employer to maintain, *inter alia*, true and accurate records of hours worked by each employee covered by an hourly minimum wage rate, and the wages paid to all employees.

192. 12 N.Y.C.R.R. § 142-2.6 requires every employer in miscellaneous industries to establish, maintain and preserve for six years weekly payroll records showing, *inter alia*, each

employee's name, wage rate, number of hours worked daily and weekly, amount of gross and net wages, deductions from gross wages, and any allowances claimed as part of the minimum wage.

193. N.Y. Lab. Law § 195(3) requires employers to furnish each employee with a statement with every payment listing gross wages, deductions taken from those wages, and the name of the employer, among other things.

194. N.Y. Lab. Law § 195(3) also requires employers to include the number of hours worked – both regular and overtime hours – to all employees who are not exempt from overtime compensation as established in the applicable minimum wage order.

195. Plaintiff and the Class Members are not exempt from overtime compensation as per the Section 142-2.2 of the Miscellaneous Industry Wage Order, 12 N.Y.C.R.R. § 142-2.2, which provides that employees subject to the exemptions in 29 U.S.C. § 213 are not exempt from the NYLL's overtime requirements and are entitled to overtime at one and one-half times the minimum wage.

196. 12 N.Y.C.R.R. § 142-2.7 requires every employer in miscellaneous industries to furnish each employee a statement with every payment of wages, listing hours worked, rates paid, gross and net wages, deductions, and allowances, if any, claimed as part of the minimum wage.

197. Defendant failed to comply with the notice and record keeping requirements of N.Y. Lab. Law § 195(3), resulting in damages under N.Y. Lab. Law § 198 for Plaintiff and the Class and attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and all others similarly situated, seek for the following relief:

A.      That, at the earliest possible time, Plaintiff be allowed to give notice to the FLSA Collective, or that the Court issue such notice.  Such notice shall inform them that this civil action has been filed, of the nature of the action, and of their right to join this lawsuit if they believe they were denied proper wages;

B.      Unpaid minimum wage pay and an additional and equal amount as liquidated damages pursuant to the FLSA and NYLL;

C.      Unpaid overtime pay under the NYLL;

D.      Statutory damages for failure to provide wage statements under the NYLL;

E.      Certification of this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

F.      Designation of Plaintiff as representative of the Class, and counsel of record as Class Counsel;

G.      Pre-judgment interest and post-judgment interest as provided by law;

H.      Appropriate equitable and injunctive relief to remedy violations;

I.      Attorneys' fees and costs of the action;

J.      Issuance of a declaratory judgment that the practices complained of in this action are unlawful under FLSA and NYLL;

K.      Reasonable incentive awards for Plaintiff to compensate him for the time he spent attempting to recover wages for the Class and for the risks they took in doing so; and

L.      Such other relief as this Court shall deem just and proper.

Dated: Melville, New York
        August 17, 2020

Respectfully submitted,

By: /s/ *Troy L. Kessler*
        Troy L. Kessler

**KESSLER MATURA P.C.**
Troy L. Kessler
Garrett Kaske
534 Broadhollow Road, Suite 275
Melville, NY 11747
Telephone: (631) 499-9100
tkessler@kesslermatura.com
gkaske@kesslermatura.com

*Attorneys for Plaintiff and the*
*Putative FLSA Collective and Class*