UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------------- X
STEVEN MANFREDO, on behalf of himself and all others : similarly situated, :
: Case No.:
                           Plaintiff, : 20 Civ. 3728 (MKB)(AYS)
   - against – :
:
VIP AUTO GROUP OF LONG ISLAND, INC., :
LEVITTOWN FORD LLC, WESTBURY JEEP CHRYSLER :
DODGE, INC., WESTBURY IMPORTS LLC f/k/a :
WESTBURY FIAT LLC, d/b/a ALFA ROMEO OF :
WESTBURY and FIAT OF WESTBURY, GRAND PRIX :
SUBARU, LLC, LINDENHURST SUBARU LLC d/b/a :
SOUTH SHORE SUBARU, VIP OF HUNTINGTON, LLC :
f/k/a and d/b/a VOLVO CARS OF HUNTINGTON, LLC, :
GARDEN CITY JEEP CHRYSLER DODGE, LLC, and :
JOEL SPORN, :
:
                           Defendants. :
----------------------------------------------------------------------------- X

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF**
**<u>PLAINTIFF'S MOTION FOR CONDITIONAL FLSA CERTIFICATION</u>**

KESSLER MATURA P.C.
Troy L. Kessler
Garrett Kaske
534 Broadhollow Rd., Ste 275
Melville, NY 11747
Phone: (631) 499-9100
Fax: (631) 499-9120
tkessler@kesslermatura.com
gkaske@kesslermatura.com

*Attorneys for Plaintiffs and the proposed FLSA Collective and New York Class*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ..................................................................................................1

PROCEDURAL AND FACTUAL BACKGROUND...................................................................1

    I.  Procedural Overview ........................................................................................................1

    II.  Factual Overview ..............................................................................................................2

        A.  Sales Professional Regularly Work Over 55 Horus a Week for VIP .................................2

        B.  VIP Fails to Compensate Sales Professionals at Above the Minimum Wage in Weeks when They Do Not Earn Commissions ......................................................................3

        C.  VIP Centrally Controls its Dealerships.................................................................4

ARGUMENT.................................................................................................................................5

    I.  Plaintiff's Proof Warrants Conditional Certification ........................................................5

        A.  Conditional Certification is a Modest Burden ......................................................5

        B.  Plaintiff's Evidence Exceeds His Modest Burden Because His Evidence Shows that VIP Has a Common Policy that Violates the FLSA Rights of Sales Professions by Denying them the Full Minimum Wage for All Hours Worked .........................................................6

        C.  Notice Should Issues to All Sales Professionals Because Plaintiff's Substantial Allegations and Documentary Evidence Supports a Finding that VIP Centrally Controls Its Dealerships and Applies Common Policies to the Sales Professionals ...................................................7

    II.  The Court Should Approve Plaintiff's Notice and Dissemination Plan ...................................9

CONCLUSION..............................................................................................................................10

## TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Bijoux v. Amerigroup N.Y., LLC*,
   2015 WL 5444944 (E.D.N.Y. Sept. 15, 2015) ................................................................... 2

*Cano v. Four M Food Corp.*,
   2009 WL 5710143 (E.D.N.Y. Feb. 3, 2009) ..................................................................... 6

*Gathmann-Landini v. Lululemon USA Inc.*,
   2018 WL 3848922 (E.D.N.Y. Aug. 13, 2018) ................................................................... 8

*Gortat v. Capala Bros., Inc.*,
   2010 WL 1423018 (E.D.N.Y. Apr. 9, 2010) ..................................................................... 6

*Karic v. Major Auto. Cos. Inc.*,
   992 F. Supp. 2d 196 (E.D.N.Y. 2014) ............................................................................... 3

*Karic v. Major Auto. Cos., Inc.*,
   799 F. Supp. 2d 219 (E.D.N.Y. 2011) ............................................................................... 8

*Lin v. DJ's Int'l Buffet Inc.*,
   2019 WL 5842798 (E.D.N.Y. Nov. 7, 2019) ................................................................... 10

*Lu v. Purple Sushi Inc.*,
   447 F. Supp. 3d 89 (S.D.N.Y. Mar. 19, 2020) .................................................................. 6

*Millin v. Brooklyn Born Chocolate, LLC*,
   2020 WL 2198125 (E.D.N.Y. May 6, 2020) ................................................................... 10

*Myers v. Hertz Corp.*,
   624 F.3d 537 (2d Cir. 2010) ............................................................................................. 5

*Panora v. Deenora Corp*,
   2020 WL 7246439 (E.D.N.Y. Dec. 9, 2020) ................................................................... 10

*Pichardo v. El Mismo Rincon Latino Corp.*,
   2018 WL 4101844 (E.D.N.Y. Aug. 7, 2018) .................................................................... 7

*Pineda v. Jim-Mar Consultants, Inc.*,
   741 F. Supp. 2d 398 (E.D.N.Y. 2010) ............................................................................... 5

*Portilla v. Bridgehampton Stone, Inc.*,
   2019 WL 1128364 (E.D.N.Y. Mar. 12, 2019) ........................................................ 6, 8, 9, 10

*Realite v. Ark Rests. Corp.*,
  7 F. Supp. 2d 303 (S.D.N.Y. 1998) ............................................................................................ 8

*Rosa v. Dhillon*,
  2020 WL 7343071 (E.D.N.Y. Dec. 14, 2020) .......................................................................... 10

*Rotari v. Mitoushi Sushi, Inc.*,
  448 F. Supp. 3d 246 (E.D.N.Y. 2020) ........................................................................................ 8

*Salomon v. Adderley Industries, Inc.*,
  847 F. Supp. 2d 561 (S.D.N.Y. 2012) ........................................................................................ 6

*Sultonmurodov v. Mesivita of Long Beach*,
  2015 WL 5918415 (E.D.N.Y. Oct. 9, 2015) ............................................................................ 10

*Walston v. Edward J. Young, Inc.*,
  2016 WL 3906522 (E.D.N.Y. Feb. 22, 2016) ........................................................................ 6, 9

**STATUTES & REGULATIONS**

29 U.S.C. § 206(a)(1)(C) ................................................................................................................ 7

12 N.Y.C.R.R § 142-2.1(a)(2) ........................................................................................................ 7

## GLOSSARY OF DEFINED TERMS

**FLSA:** The "FLSA" means the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, *et seq.*

**NYLL:** The "NYLL" means the New York Labor Law, Article 19, § 650 *et seq.*, and Article 6, § 190 *et seq.*

**Plaintiff:** "Plaintiff" or "Manfredo" means Plaintiff Steven Manfredo.

**SP:** "SP" is the abbreviation of "Sales Professional" and refers a commission-paid salesperson, however titled, employed by Defendants at any time since August 17, 2017, pursuant to the FLSA, or August 17, 2014, pursuant to the NYLL.

**VIP:** "VIP" refers, collectively, to Defendants VIP Auto Group of Long Island, Inc., Levittown Ford LLC, Westbury Jeep Chrysler Dodge, Inc., Westbury Imports LLC f/k/a Westbury Fiat LLC, d/b/a Alfa Romeo of Westbury and Fiat of Westbury, Grand Prix Subaru, LLC, Lindenhurst Subaru LLC d/b/a South Shore Subaru, VIP of Huntington, LLC f/k/a and d/b/a Volvo Cars of Huntington, LLC, Garden City Jeep Chrysler Dodge, LLC and Joel Sporn.

**VIP Auto Group:** "VIP Auto Group" refers solely to Defendant VIP Auto Group of Long Island, Inc.

**PRELIMINARY STATEMENT**

The Court should grant Plaintiff's Motion for Conditional FLSA Certification because his evidence shows that he and other SPs earned less than the minimum wage based on VIP's policy to pay SPs' the same weekly salary regardless of the number of hours they worked. Plaintiff seeks an order to: (1) conditionally certify the collective action; (2) require VIP to furnish the contact information for all commission-paid salespersons employed since August 17, 2014; and (3) require VIP to post and Plaintiff to circulate a Notice and Consent by mail (Ex. A-1) and email (Ex. A-2).

Plaintiff submits a detailed declaration outlining his experience and knowledge of the experiences of other SRs. He explains that SRs are scheduled to work over 50 hours a week but actually work over 55 and 60 hours a week, because of VIP's policies and practices forcing SRs to perform extra work on top of their schedules. That is, SPs come in on their days off, arrive early, leave late, work through meals, and respond to communications on their time off from work. Yet, if SPs do not earn commissions, their wages are limited to their weekly $400 salary. Given the number of hours SRs work, the hourly earnings in weeks without commissions earned dips below the minimum wage threshold.

**PROCEDURAL AND FACTUAL BACKGROUND**

**I.      Procedural Overview.**

On August 17, 2020, Plaintiff filed the Complaint alleging minimum wage violations under the FLSA and NYLL, along with overtime and wage statement violations under NYLL. Ex. C-1 (Compl.) ¶¶ 2, 122, 125, 140-145. VIP waived service of the summons on September 23, 2020, setting the time to answer as November 14, 2020. ECF No. 5 (Waiver). After a brief extension on their time to answer, Defendants filed the Answer on November 20, 2021. Ex. C-2 (Ans.).

After sharing the proposed notice package with Defendants, the parties conferred on this motion by phone on March 19 and March 25. Kaske Decl. ¶ 3. Because Defendants do not consent to this motion, Plaintiff moved for conditional certification by way of letter motion on March 26, 2021 (ECF No. 8), which the Court denied without prejudice for failure to abide by the Court's pre-motion request and bundling rules. Dkt. Ord. (Mar. 29, 2021). Plaintiff now submits this motion pursuant to Your Honor's Individual Rules to decide "in the first instance." *Bijoux v. Amerigroup N.Y., LLC*, No. 14 Civ. 3891, 2015 WL 5444944, at *1 (E.D.N.Y. Sept. 15, 2015).

The initial conference is set for April 28, 2021. ECF No. 10 (Ord.). As a result, no discovery has been taken. Kaske Decl. ¶ 6.

## II.     Factual Overview

Defendant VIP Auto Group of Long Island, Inc. ("VIP Auto Group") operates eight dealerships in Suffolk and Nassau County. *See* Locations, https://www.vipautomotivegroup.com/locations/index.htm (last accessed Mar. 31, 2020). VIP Auto Group's dealerships include Defendants (1) Levittown Ford, LLC, (2) Westbury Jeep Chrysler Dodge, Inc., (3) Westbury Imports, LLC d/b/a Alfa Romeo of Westbury and Fiat of Westbury; (4) Grand Prix Subaru, LLC; (5) Lindenhurst Subaru, LLC d/b/a South Shore Subaru; (6) VIP Huntington, LLC d/b/a Volvo Cars of Huntington; and (7) Garden City Jeep Chrysler Dodge, LLC. *See id.*; Ex. C (Summary) ¶¶ 99, 104; Ex. C-1 (Compl.) ¶¶ 29, 30, 50, 59 *and* Ex. C-1 (Ans.) ¶¶ 29, 30, 50, 59 (d/b/a admissions). VIP's facilities span over "100,000 square feet of sales and service facilities." *See* About Us, https://www.vipautomotivegroup.com/dealership/about.htm (last accessed Mar. 31, 2020).

### A.     Sales Professionals Regularly Work Over 55 Hours a Week for VIP.

VIP employs SPs to sell vehicles its dealership's customers. Ex. B (Decl.) ¶¶ 6-7, 23, 25; Ex. H (Composite Postings) at 1, 7, 15, 21, 27. SPs' earnings are keyed to their sales performance,

2

because they receive bonuses and commission based on their sales. *See* Ex. B (Decl.) ¶¶ 20-21, 28-29. Given the VIP's policies and pay structure, SPs do whatever it takes to make a sale, including working long hours and outside of their schedules. *See* Ex. B (Decl.) ¶¶ 13-19, 27-29.

SPs at VIP consistently work over 55 hours a week. *See* Ex. B (Decl.) ¶¶ 9-12, 26-29; Ex. B-1 (Schedule). To start, they are scheduled for over 50 hours a week. *See* Ex. B (Decl.) ¶ 12; Ex. B-1 (Schedule). In addition to these scheduled hours, SPs work before and after their scheduled shifts to make sales. *See* Ex. B (Decl.) ¶¶ 13-19, 26-29. For example, SPs regularly: come in on their days off; communicate with customers; and communicate with their coworkers. *Id*. SPs also work through there meal breaks and take shortened breaks. *See id*. ¶ 19. As result, SPs work over 55 and 60 hours a week to meet the needs of the job. *See id*. ¶ 12.

Plaintiff witnessed other SPs performing the same duties as him. *See id*. ¶¶ 23, 25. VIP also has a common, centralized training program – further evincing the common job responsibilities and duties. *See id*. ¶ 36; Ex. F (Progress Report); Ex. G (Road to Sale). Based on his knowledge of the industry, his conversations with other SPs, and observations, Plaintiff also knows SPs worked under the same pressures to work extra hours on top of their scheduled hours to meet the expectations of the position and earn a living. *See id*. ¶¶ 23, 25, 27-29.[1]

**B. VIP Fails to Compensate Sales Professionals at Above the Minimum Wage in Weeks When They Do Not Earn Commissions.**

SPs are only paid their modest salary of $400 a week when they do not earn any commissions. *Id*. ¶¶ 20-22; Ex. B-2 (Paystubs); Ex. N (Pay Plan). VIP does not record and report SPs' hours. *See* Ex. C-1 (Compl.) ¶¶ 152, 166; Ex. B-2 (Paystubs). And, VIP does not increase SPs' wages to keep their wages above the minimum wage in any given week. *Id*.; *see also* Ex. C-

---

[1] Such pay structures have been common in this industry. *See, e.g.*, *Karic v. Major Auto. Cos. Inc*., 992 F. Supp. 2d 196, 200 (E.D.N.Y. 2014) (discussing practice of only paying a day-rate to salespeople if they did not make sales, which was less than the minimum wage).

1 (Compl.) ¶¶ 144-46; Ex. B (Decl.) ¶ 22.  As a result, when dividing their salaries by the hours worked in these weeks, SPs received less than the minimum wage.  *See* Ex. C-1 (Compl.) ¶ 148. That is, a $400 salary only satisfies the federal minimum wage of $7.25 up through 55.17 hours of work a week, which SPs regularly exceed.

### C. VIP Centrally Controls its Dealerships.

VIP centrally controls its dealerships.  Defendants share the same address for process of service.  *See* Ex. C (Summary) ¶¶ 12, 21, 32, 41, 58, 67, 85; Ex. D (Dep't of St. Docs.).  VIP uses a central website for its dealership, which customers can use to buy and sell vehicles across VIP's dealerships.  *See* Ex. C (Summary) ¶ 86; Ex. E (Website Pgs.) at 4-12.  VIP's owners, executives, dealership management, and human resources operate out their Levittown Ford location.  Ex. B (Decl.) ¶¶ 31-37; Ex. C (Summary) ¶¶ 43 (General Manager of Westbury Jeep's office is in the Levittown Ford dealership), 99, 104, 114-19 (Defendant Joel Sporn's involvement and control across locations).  VIP's owner, Defendant Sporn, has an ownership in each dealership Defendant, in additional to VIP Auto Group.  Ex. C (Summary) ¶¶ 99, 115.  He also is a corporate officer of all entities.  *Id*. ¶ 104.  He also has the power to hire and fire employees of VIP.  *Id*. ¶ 110. Defendant Sporn, as the President and CEO of VIP, is the signatory to a welcome letter provided to their dealership employees, such as Manfredo.  See Ex. B-4 (Hiring Ltr.); Ex. C (Summary) ¶¶ 40, 116.  He is also involved in the day-to-day dealership operations and can enter into contracts on behalf of VIP.  Ex. C (Summary) ¶¶ 114, 117-118.

VIP centrally controls the recruitment and management of its dealership's SPs.  That is, VIP uses its website to recruit SPs and train SPs.  *See* Ex. E (Website Pgs.) at 1-3.  VIP has a centralized training program.  *See* Ex. C (Summary) ¶¶ 87-89; Ex. F (Progress Report) (noting that the progress report is sent to Mr. Ballasy at VIP); Ex. G (Road to a Sale) (noting same is property of VIP Auto Group and including logos of the different dealerships).  VIP uses job postings that

4

apply across their various locations. *See* Ex. H (Composite of Postings) at 1 (listing four locations). Likewise, VIP's job postings use a common job description. *Id*. at 1. VIP's Director of Human Resources is involved in recruitment, hiring and firing of SPs, regardless of the location. Ex. I (LinkedIn); Ex. J (LinkedIn Feed); Ex. K (Term. Ltr.) (signed by Ms. Leone); Ex. L (New Hire Form) (same); Ex. M (195.1 Form) (same). VIP also has interrelated payroll. *See also* Ex. B (Decl.) ¶ 38, Ex. B-3 (Address Exs.)

## ARGUMENT

**I. Plaintiff's Proof Warrants Conditional Certification.**

Second Circuit courts apply a two-step methodology in FLSA cases. *Myers v. Hertz Corp.*, 624 F.3d 537, 554-55 (2d Cir. 2010). At the first step, the conditional certification stage, courts permit notice to issue to potential opt-in plaintiffs and grant them to opportunity to join. *Id*. Then, after discovery, courts determine whether the named plaintiffs and opt-in plaintiffs are actually "similarly situated" to one another for purposes of trial. *Id*. at 555.

This motion is a step-one motion, which is subject to a modest burden. *See infra* Arg. § I(A). Plaintiff's evidence satisfies his burden because it shows VIP has a common policy to pay SPs a base salary without regard to the number of hours worked or commissions earned, which violates the FLSA's minimum wage requirement. *See infra* Arg. § I(B). As a result, notice should issue to all SPs across VIP's locations because Plaintiff's substantial allegations demonstrate that VIP applies common wage policies and job requirements to all its SPs. *See infra* Arg. § I(C).

**A. Conditional Certification is a Modest Burden.**

To serve the FLSA's "broad remedial purpose," courts conditionally certify collective actions, allowing potentially "similarly situated" employees to receive early notice of the case and the opportunity to join it. *Pineda v. Jim-Mar Consultants, Inc.*, 741 F. Supp. 2d 398, 402 (E.D.N.Y. 2010). Because the statute of limitations runs until individuals file their consents with

5

the court, "early certification and notice are favored in order to protect the plaintiffs' rights." *Gortat v. Capala Bros., Inc.*, No. 07 Civ. 3629, 2010 WL 1423018, at *9 (E.D.N.Y. Apr. 9, 2010). This "facilitate[s] swift and economic justice." *Lu v. Purple Sushi Inc.*, 447 F. Supp. 3d 89, 93 (S.D.N.Y. Mar. 19, 2020).

In the first step, courts look to the pleadings and declarations to decide if the employees may be similarly situated. *Portilla v. Bridgehampton Stone, Inc.*, No. 17 Civ. 2549, 2019 WL 1128364, at *7 (E.D.N.Y. Mar. 12, 2019) (Shields, Mag.). Plaintiffs need only make a "modest factual showing" that they and the putative class "were victims of a common policy or plan that violated the law." *Id*. (quotations and citations omitted). This burden is minimal. *See id*. at *7 (collecting cases); *Walston v. Edward J. Young, Inc.*, No. 15 Civ. 457, 2016 WL 3906522, at *5 (E.D.N.Y. Feb. 22, 2016) (Shields, Mag.). The "burden at the conditional certification stage is so low that Plaintiff's lone affidavit setting forth a common payment scheme may suffice." *Watson*, 2016 WL 3906522, at *5 (collecting cases); *Portilla*, 2019 WL 1128364, at *7 ("Courts in this Circuit have granted conditional certification motions based on the complaint or the complaint and the plaintiff's affidavit alone.").

**B. Plaintiff's Evidence Exceeds His Modest Burden Because His Evidence Shows that VIP Has a Common Policy that Violates the FLSA Rights of Sales Professions by Denying them the Full Minimum Wage for All Hours Worked.**

Conditional certification is appropriate where a plaintiff alleges that the company denied them proper overtime or minimum wages and observed that others were subjected to the same policy. *Walston*, 2016 WL 3906522, at *5 (collecting cases); *Salomon v. Adderley Industries, Inc.*, 847 F. Supp. 2d 561, 564-65 (S.D.N.Y. 2012) (conditionally certifying collective of cable technicians where plaintiffs alleged that their paid workday did not include paperwork and administrative duties and they identified similarly situated cable technicians by name); *Cano v. Four M Food Corp.*, No. 08 Civ. 3005, 2009 WL 5710143, at *6 (E.D.N.Y. Feb. 3, 2009) (Bianco,

6

J.) (relying on the plaintiffs' affidavits recounting their overtime worked, naming potential opt-ins, and noting conversations they had with potential opt-ins about the failure to pay overtime).

As Plaintiff describes, SPs were subjected to common wage and hour policies of requiring them to work over 55 hours a week without the benefit of the full minimum wage. SPs were required to do whatever they had to do to make a sale. *See also* Ex. B (Decl.) ¶¶ 13-19, 28-29 (describing workplace pressures). VIP, however, only pays SP more than their salary if they made sufficient sales. *Id*. ¶¶ 20-22; Ex. B-2 (Paystubs); Ex. N (Pay Plan). Because SPs hours are not tracked and were not supplemented in weeks when their sales are deficient, their average hourly rate regularly falls below the minimum wage.[2] *See, e.g.*, Ex. C-1 (Compl.) ¶¶ 152, 166; Ex. B-2 (Paystubs). Plaintiff, therefore, has articulated a common policy that violates the FLSA.

Moreover, Plaintiff's declaration and other evidence shows that similarly situated SPs exist. Plaintiff submits a schedule naming 13 other SPs whom are all scheduled to work over 50 hours a week. Ex. B-1 (Schedule). Plaintiff's declaration names two other SPs, in addition to this schedule. Ex. B (Decl.) ¶ 24. Plaintiff further explains that these other SPs worked under the same pressures and rules as he did, which resulted in them working beyond their schedule and depressing their wages below the minimum wage. *Id*. ¶¶ 26-29. Plaintiff, therefore, has shown that there are SPs whom would benefit from receiving notice of this matter.

---

[2] As discussed in Sections II(A) and (B) of factual overview above, SPs' hourly rate of pay fall below the federal minimum wage as a result of regularly working well over 55 hours a week. *See* 29 U.S.C. § 206(a)(1)(C) ($7.25 an hour). Although not the primary issue here, it is worth noting that SPs' hourly rates fall well under the state minimum wage even if they only worked their 50-hour schedule ($400 / 50 = $8) or less ($400 / 40 = $10). *See* 12 N.Y.C.R.R § 142-2.1(a)(2) (raising the minimum wage by one dollar each year, from $10 in 2017 through $14 in 2021). *See also Pichardo v. El Mismo Rincon Latino Corp.*, No. 17 Civ. 439), 2018 WL 4101844, at *4 (E.D.N.Y. Aug. 7, 2018), *adopted*, 2018 WL 4100480 (E.D.N.Y. Aug. 28, 2018) ("Where a state's minimum wage is higher than the federal minimum wage, the state's minimum wage must be paid by the employer to satisfy FLSA's minimum wage requirement.")

**C. Notice Should Issues to All Sales Professionals Because Plaintiff's Substantial Allegations and Documentary Evidence Supports a Finding that VIP Centrally Controls Its Dealerships and Applies Common Policies to the Sales Professionals.**

A collective is not limited to the location in which the plaintiffs worked if they set forth evidence of a potentially widespread issue. *See, e.g.*, *Gathmann-Landini v. Lululemon USA Inc.*, No. Civ. 156867, 2018 WL 3848922, at *9 (E.D.N.Y. Aug. 13, 2018) (Shields, Mag.) ("Although Plaintiff has not submitted affidavits detailing every retail store location in the state of New York, [certification is appropriate because] she has demonstrated that all Assistant Managers and Key Leaders have similar job duties, are subjected to the same de facto policies . . . ."); *Realite v. Ark Rests. Corp.*, 7 F. Supp. 2d 303, 307-08, 310 (S.D.N.Y. 1998) (Sotomayor, J.) (off-the-clock collective of employees from 15 restaurants was conditionally certified, even though the restaurants were "separate establishments not centrally controlled"). Such a limitation is improper as it would "impose on the Plaintiff the burden of proving that potential unknown plaintiffs are similarly situated, directly conflicting with the purpose of this step to collect all putative collective members even if those members are unknown." *Portilla*, 2019 WL 1128364, at *7. Even though not required, evidence of common ownership and centralized labor management supports conditional certification. *See, e.g.*, *Rotari v. Mitoushi Sushi, Inc.*, 448 F. Supp. 3d 246, 252-53 (E.D.N.Y. 2020) (certifying multi-location collective based on evidence of common ownership); *Gathmann-Landini*, 2018 WL 3848922, at *6-7 (collecting cases and reviewing common-ownership evidence and documentary evidence); *Karic v. Major Auto. Cos., Inc.*, 799 F. Supp. 2d 219, 227 (E.D.N.Y. 2011) ("[Common] allegations, coupled with plaintiffs' claim that there is common ownership and control of all of these entities, including the three dealerships for which no plaintiff has yet appeared, is sufficient.").

Plaintiff has shown that the challenged wage practices extended across all of VIP's dealerships by detailing VIP's centralized control of their SPs, common workplace policies and

8

pressures, and common duties. Specifically, VIP uses common job descriptions across its dealerships and posts common job openings on its dealerships' behalf. *See* Ex. H (Composite of Postings). These job descriptions corroborate the pressures Manfredo explained in his declaration, which causes SPs to work excessive hours, including by requiring SPs to, inter alia, (a) have a "high level of commitment to customer satisfaction," (b) assist customers and explain "fully" VIP's product, (c) perform numerous forms of customer "follow up" and paperwork, (d) "not only meet but exceed [sales] targets," and (e) complete their vehicle delivery responsibilities. *See, e.g.*, *id.* at 1-2. Manfredo also provided examples of two individuals who were transferred between VIP's dealerships to perform the same job. Ex. B (Decl.) ¶ 25. Moreover, Manfredo detailed and submitted evidence, and admissions by VIP, that reveal how VIP centrally trains, controls, and applies workplace policies to its dealerships' SPs. *See supra* Facts § II(C). Thus, conditional certification of all SPs is warranted.

**II.     The Court Should Approve Plaintiffs' Notice and Dissemination Plan.**

The Notice and Consent distribution plan should be approved. *See* Ex. A (Distribution Summary). Plaintiff seeks to issue notice to all salespersons employed since August 17, 2014, which is six years before the Complaint was filed. *See Walston*, 2016 WL 3906522, at *7 (applying six-year look back and collecting cases). To facilitate notice, VIP should produce a computer-readable list containing each SP's (1) name, (2) addresses, (3) phone number, (4) email, and (5) dates of employment. *Portilla*, 2019 WL 1128364, at *9.

The Court should allow distribution of the Notice and Consent by (a) mail, (b) email, and (c) posting. *See Portilla*, 2019 WL 1128364, at *10 (approving notice by mail, email, text, and posting, and a reminder notice); *see* Ex. A-2 (Proposed Email Notice). Electronic notice, like the proposed email notice, is particularly appropriate given the "broad remedial purpose of the FLSA" and the "reality of current life." *See Millin v. Brooklyn Born Chocolate, LLC*, No. 19 Civ. 3346, 2020

9

WL 2198125, at *3 (E.D.N.Y. May 6, 2020). This is particularly true in light of the unprecedented impact the Covid-19 pandemic has had on our lives and living arrangements. *See Panora v. Deenora Corp*, No. 19 Civ. 7267, 2020 WL 7246439, at *5 (E.D.N.Y. Dec. 9, 2020).

The Court should also permit a reminder notice (Ex. A-3) to issue halfway through the notice period to help ensure that the collective receives timely notice of their rights. *See Sultonmurodov v. Mesivita of Long Beach*, No. 15 Civ. 1654, 2015 WL 5918415, at *2 (E.D.N.Y. Oct. 9, 2015) (Shields, Mag.); *Portillo*, 2019 WL 1128364, at *9-10. Reminder notices have become a common tool to effectuate FLSA notice in this District. *See Rosa v. Dhillon*, No. 20 Civ. 3672, 2020 WL 7343071, at *8 (E.D.N.Y. Dec. 14, 2020).

Lastly, the content of the Notice and Consent should be approved, as it mirrors the Court's model forms. *Lin v. DJ's Int'l Buffet Inc.*, No. 17 Civ. 4994, 2019 WL 5842798, at *6 (E.D.N.Y. Nov. 7, 2019) (providing the parties with a "pre-approved form of notice" including the language at issue and noting that this form "reflects the holdings of this Court (and the majority view in this District) as to issues of notice that are continually subject to litigation").

## CONCLUSION

For these reasons, Plaintiff respectfully requests that the Court conditionally certify the proposed collective, order the production of the requested contact information, approve the proposed notices, as revised, to authorize the distribution of the notices by mail and email, and require Defendants to post the notice.

Dated: Melville, New York
      April 2, 2021

                                              Respectfully submitted,

                                              By: s/ Garrett Kaske

                                              **KESSLER MATURA P.C.**
                                              Troy L. Kessler


Garrett Kaske
534 Broadhollow Road, Suite 275
Melville, NY 11747
Phone: (631) 499-9100
Fax: (631) 499-9120
tkessler@kesslermatura.com
gkaske@kesslermatura.com

*Attorneys for Plaintiff and the Proposed Class and Collective*